[No. G011809. Fourth Dist., Div. Three. Nov. 25, 1992.]

In re the Marriage of ELIZABETH ANN and PATRICK JOSEPH MEEGAN.
ELIZABETH ANN MEEGAN, Appellant, v.
PATRICK JOSEPH MEEGAN, Respondent.

**COUNSEL**

Michael Leight for Appellant.

Jonathan R. Cox for Respondent.

## OPINION

**MOORE, J.**—In a marital dissolution judgment, a husband is ordered to pay monthly spousal support and does so for some years. Thereafter, however, he voluntarily resigns his high-paying job and enters a monastery to pursue a life of religious observation and prayer. In this case of first impression, we must decide whether it was an abuse of discretion for the trial court to grant the husband's request to reduce the spousal support award to zero.

### FACTS

After more than 23 years of marriage, Elizabeth and Patrick Meegan were divorced on May 17, 1988. At the time of the dissolution, Patrick's net disposable income was $4,700 per month. Although the financial records submitted to the court were incomplete, the evidence indicated Elizabeth, who was a nurse, had a monthly net disposable income of $1,900. Patrick was ordered to pay $739 per month spousal support.

In early 1991, Patrick decided to pursue a life of religious observance and prayer. He resigned his job as a sales executive, joined an order of the Catholic church, and entered the Holy Trinity Monastery in St. David, Arizona. He supported himself from his savings and, though he was no longer employed, continued to contribute $875 per month toward his two adult daughters' college educations and expenses. Patrick agreed to pay his 25-year-old daughter $300 per month, and his 19-year-old daughter $425 per month plus $150 a month for her car insurance, until they graduated and found employment.

On March 22, Patrick, then in his mid-50's, filed an order to show cause for modification seeking to terminate his obligation to pay spousal support, stating: "I am no longer employed and I cannot continue my former vocation due to its stress which has caused me depression and my conscience and desire to become a Catholic priest dictate I follow a path of good works and services. [¶] In preparation to become a priest, I plan to work at 'Holy Trinity Monestary' [*sic*] for a year of voluntary community work. [¶] During the next few years I do not anticipate I will be earning income. I plan to support myself from my separate property from my divorce. I cannot afford to pay spousal support during the time I have no income."

Patrick estimated it would take four and a half to five years to become a permanent member of the religious order, prior to which time he could be asked to leave. He conceded the church might not permit him to become a priest because he had been married previously and would have to obtain an

annulment before he could make his vows. At the time of the hearing, he had not started the annulment process. He was not obligated to pay money to the church for his residence at the monastery, and the church supplied his food and drink.

Patrick had $4,873 in checking accounts, $16,379 in a savings account, and stock worth $73,000. He received $4,700 from his pension plan when he resigned his job. In the year prior to the order to show cause (OSC) hearing, Patrick gave $4,000 to the church. Elizabeth testified her income was $28,000 per year at the time of the dissolution and that she had $70,000 in assets, including equity in her home. Patrick contended Elizabeth's income increased 30 percent between the time of the dissolution and the time of the OSC.

The court entered an order reducing the spousal support to zero, ruling: "The judgment of dissolution of marriage . . . is modified. Spousal support is reduced to zero . . . , with the court reserving jurisdiction over it. In the event [Patrick] obtains employment the spousal support order made in [the] judgment of dissolution of marriage is reinstated upon [Patrick's] receipt of a first paycheck, until a court of competent jurisdiction can evaluate the then existing financial situation in order to make a new order. . . ."

The court determined Patrick was acting in good faith and did not resign his job to avoid his spousal support obligations. The court also found that Elizabeth had a capacity "to be financially independent without a substantial reduction in her standard of living," and emphasized its decision would have been different if Elizabeth was "unemployable and faced with an impoverished situation as [compared] to being employable and faced with a minimal reduction in standard of living." The court found support should be reduced to zero based upon Patrick's "being no longer income-producing and his rights to a free[] alienation of his existing property." The court also stated that Patrick had "the ability to pay until he has no further money. That's patently obvious from the facts presented. The question [is] should the court take from him all capital as a response to this relief presuming that there was a division of community property with some rule of reason as to that division . . . some four years ago. [¶] The question now is: do I have jurisdiction to take from [Patrick] all that he has, and the answer is no, I do not have that jurisdiction and I will not do that."[1]

■■■ Elizabeth contends the trial court abused its discretion by reducing the spousal support to zero and by denying her request to create a

---

[1]The trial court considered numerous hypotheticals and emphasized the importance of this case to the bench and bar. For example, the judge considered a scenario where a wealthy stockbroker from Newport Beach divorces his wife and moves to Utah to rent canoes for

lien in her favor on moneys and other property owned by Patrick to secure payment to her of any future spousal support payments ordered made by Patrick.[2]

## DISCUSSION

Spousal support is not a mandatory requirement in dissolution proceedings. (See Civ. Code, § 4801.) "Spousal support must be determined according to the needs of both parties and their respective abilities to meet these needs. [Citation.] In this regard, a trial court has broad discretion and an abuse thereof only occurs when it can be said that no judge reasonably could have made the same order." (*In re Marriage of Rome* (1980) 109 Cal.App.3d 961, 964 [167 Cal.Rptr. 351]; see also *In re Marriage Bukaty*, *supra*, 180 Cal.App.3d at p. 147.)

Similarly, modification of a spousal support order is a matter for the sound exercise of the court's discretion, based upon a showing of a material change of circumstances since the last spousal support order. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 480 [274 Cal.Rptr. 911]; *In re Marriage of Kuppinger* (1975) 48 Cal.App.3d 628, 633 [120 Cal.Rptr. 654].) On appeal, this court must accept as true all evidence tending to establish the correctness of the trial judge's findings, resolving all conflicts in the evidence in favor of the prevailing party and indulging in all legitimate and reasonable inferences to uphold the judgment. When a finding of the trial court is attacked as being unsupported, our power begins and ends with a determination of whether there is any substantial evidence which will support the conclusions reached by the trial court. (*In re Marriage of Hopwood* (1989) 214 Cal.App.3d 1604, 1607 [263 Cal.Rptr. 401].)

Elizabeth first argues the trial court abused its discretion in reducing her spousal support to zero. We disagree. Elizabeth concedes there was a change of circumstances, but, quarreling with the trial court's factual findings, she argues this situation is "no different than if [Patrick] had simply

---

$25,000 a year, leaving the wife and family destitute. He also considered the possibility of a trial attorney making $250,000 a year deciding to become a judge and earn $80,000 a year. The judge noted that courts have concluded that there are "no rules we could come up with, no pattern. . . . [E]very case would be analyzed on an individual basis."

[2]Elizabeth also purports to argue the court abused its discretion by allowing introduction of evidence of her financial condition because Patrick did not base his application to terminate support on that factor. However, she has failed to cite this court to any authority in support of that contention, and, therefore, we deem any error in that regard to have been waived and refuse to consider it. (*Troensegaard* v. *Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712]; *Sprague* v. *Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 [213 Cal.Rptr. 69].) Moreover, it is well established that spousal support must be determined by the financial needs of *both* parties and their abilities to meet those needs. (See, e.g., *In re Marriage Bukaty* (1986) 180 Cal.App.3d 143, 147 [225 Cal.Rptr. 492].)

decided to stop all work and to spend the rest of his life surfing." However, a bona fide motive leading to a change of circumstances may be the basis for a reduction in spousal support. (*In re Marriage of Sinks* (1988) 204 Cal.App.3d 586, 594 [251 Cal.Rptr. 379].) Here, the court found Patrick did not quit his job to avoid his spousal support obligation and that he acted in good faith in deciding to enter the monastery.

Without citation to authority, Elizabeth claims a party seeking to reduce a spousal support obligation should be required to show a change of circumstances *beyond his or her control.* No case has ever so held, and we decline to impose that requirement. Moreover, the cases relied upon by Elizabeth are uniformly fatal to her contention.

*In re Marriage of Sinks, supra,* 204 Cal.App.3d 586 affirmed the trial court's decision refusing to reduce spousal support. However, the court based its conclusion on the fact that the husband retired from his job in "an attempt to shirk his support obligation." (*Id.* at p. 594.) Because the trial court found the husband's retirement "was improperly motivated," the Court of Appeal did not address the question of first impression raised here.[3] As Elizabeth concedes, the trial court here found Patrick was "well motivated."

*In re Marriage of Williams* (1984) 155 Cal.App.3d 57 [202 Cal.Rptr. 10], cited by Elizabeth, actually supports our position. There, the trial court found that the ex-husband did not deliberately attempt to avoid his financial responsibilities. The ex-husband and his second wife had quit their jobs and moved to Reno, Nevada. Their monthly income from salaries was reduced to zero. The Court of Appeal held that unless there was some conduct by which a father was deliberately attempting to shirk his responsibility to his children, the trial court could properly consider only his actual earnings and not his ability to earn.

Here, the trial court found that Patrick did not quit his job to avoid his spousal support obligation and was acting in good faith. Credibility is a matter within the trial court's discretion. (*In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 861 [269 Cal.Rptr. 917].) The court believed Patrick's testimony that he could not continue his former employment due to stress and depression, and due to the fact that his "conscience and desire to become a Catholic priest dictate [he] follow a path of good works and services in preparation to becoming a priest." The evidence was uncontroverted that he

---

[3]However, the court did anticipate the question now before us: "If the circumstances here were different and the motivation behind the retirement were not suspect, the case would raise an issue of first impression in this state: Is a supporting spouse . . . obligated to continue working to provide spousal support?" (*Id.* at p. 594.)

did, in fact, take residence at the monastery, that he was no longer employed, and that he was earning no income. Patrick estimated it would take four and a half to five years for him to become a permanent member of the religious order, at which time he would be required to take a vow of poverty. Deferring to the trial court's findings on these credibility issues, as we must, we conclude there was no abuse of discretion in reducing Elizabeth's spousal support to zero.

Elizabeth also asks us to find that spousal support should be based on Patrick's ability to earn, rather than on his actual earnings. In light of the trial court's determinations, we may not do so. ■ "It has long been the rule the court can consider the payor's earning capacity when determining . . . spousal support. [Citations.] However, this rule has been applied *only where the parent has demonstrated a willful intention to avoid fulfilling financial obligations through deliberate misconduct.*" (*In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1371 [263 Cal.Rptr. 243] italics added; see also *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408].) No such facts exist here.

■ Finally, Elizabeth contends the court should have ordered that all of Patrick's cash, promissory notes, or other resources available to pay spousal support be placed in an interest-bearing account requiring the signatures of both parties or a court order for any disbursement, in order to ensure that she continue to receive spousal support. Civil Code section 4801, subdivision (a) provides the court may order the supporting spouse to provide reasonable security for payments ordered.

Elizabeth notes Patrick has $70,000 in assets which would allow her to receive spousal support payments at the current rate for approximately eight more years. However, we cannot conclude the trial court abused its discretion in refusing to impose a lien or set up an interest-bearing account in this case.

Elizabeth relies on *In re Marriage of Johnson* (1982) 134 Cal.App.3d 148 [184 Cal.Rptr. 444], where the trial court placed a lien on the husband's entire share of the community property to secure payment of court ordered spousal and child support. As the *Johnson* court noted, the trial court had discretion to impose a lien, or other remedies, including contempt, wage assignment, executions, and receiverships. (*Id.* at pp. 161-162.) Those remedies were clearly available for consideration by the trial court in that case. Here, however, after the court's ruling, Elizabeth's counsel sought an order from the trial court to prevent Patrick from "walking out the door and giving everything he owns to the Catholic church." Elizabeth asked the court to

"enjoin [Patrick] from any transfer of any sum of money that he has other than his normal and customary living expenses as he has described them until this case is final on appeal." The trial judge noted that request was not before him and, when Patrick's counsel was unwilling to stipulate to that injunction, the court refused to make any such order. Having failed to timely request the imposition of a lien or other remedies in the trial court, we may not consider this argument here.

The judgment is affirmed. In the interests of justice, each side shall bear his or her own costs on appeal.

Sills, P. J., and Crosby, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 18, 1993.