[No. E009281. Fourth Dist., Div. Two. Feb. 2, 1993.]

In re the Marriage of BETTY JANE and MICHAEL JOHN ILAS.
BETTY JANE ILAS, Respondent, v.
MICHAEL JOHN ILAS, Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, IV and VI.

COUNSEL

R.E. Scott for Appellant.

Marshall Miles for Respondent.

HOLLENHORST, J.—Mr. Ilas, former husband of the former Mrs. Ilas, appeals from the trial court's denial of his motion to modify child and spousal support and related orders.

## I. FACTS

The parties were married in July 1974, and separated in September 1986. They have two children, now ages 16 and 15. The parties were divorced as of January 23, 1988, by a judgment filed in May 1988. At the time of divorce, the husband, then age 39, was earning $3,250 a month as a pharmacist. The former wife, then age 37, was unemployed.

The parties agreed that Mr. Ilas would pay child support totalling $378 per month per child until each child reached age 18; that he would pay spousal support of $682 per month until the former wife's remarriage, death or further order of the court; and that he would maintain the children on his medical, hospitalization and dental plans as long as they were eligible for those plans.

The primary asset of the parties was the family home. They agreed that it should be sold and the proceeds held in an attorney's trust account until distribution was ordered. The home eventually sold on July 30, 1990, for $390,000. Net proceeds due to the sellers were $352,691.05.

On June 5, 1990, Mr. Ilas filed a motion to modify his spousal and child support obligations. The motion was brought upon the grounds that he had quit his employment to enter medical school in August 1989, and he had been a full-time student since that time. He alleged that he would be working for his former employer in the summer of 1990, generating gross income of $4,853 per month. Although he did not expect to work further until he completed his schooling, he requested that his spousal support obligation be terminated, suspended until the completion of his schooling, or reduced commensurate with his 1990 average monthly earnings of $1,027. He also requested that his child support obligations be reduced to be consistent with his 1990 average monthly earnings of $1,027. Since he was no longer employed, he also requested that he be relieved of his obligation to maintain his children on the medical, hospitalization and dental plans offered by his former employer.

The former Mrs. Ilas filed two declarations on August 14, 1990, stating that she was unemployed, that she and her two children were living with her parents, and that she was currently supported by her parents. She alleged that, although she supported herself and her children with the money she received from Mr. Ilas, he had been "erratic at best" in payment of support obligations, and that he owed $11,504 as of July 1, 1990. She also alleged that her former husband had not visited the children since October 1989, and he had been hiding and concealing himself from her. She requested that the court order payment to two creditors from the trust account containing funds from sale of the family home, and that Mr. Ilas be required to provide security for payment of future support obligations.

On August 14, 1990, the trial court entered its order denying the request for modification of spousal and child support. After noting that the parties were receiving significant amounts of money from sale of the family home, the trial court stated: "The court finds that [Mr. Ilas] did not have the right to divest himself of his earning ability at the expense of [the former Mrs. Ilas] and his two minor children. [Mr. Ilas] may wish to undertake and pursue and continue to pursue his acquisition of a medical doctorate degree, but he must also continue to pay his child and spousal support."

A separate motion for disbursement of the funds remaining in the trust account was filed on November 5, 1990. The motion included a request that the sum of $39,558 be held to provide security for future support obligations.

On January 24, 1991, the trial court issued its decision on the reserved issues. It found that the parties should equally pay the medical and dental expenses of the children, effective June 5, 1990. The court approved disbursement of the balance of the proceeds of the home sale, but ordered that a total of $12,000 of Mr. Ilas's entitlement be held as security for the payment of future child support obligations in accordance with Civil Code section 4701.1, subdivision (c).[1] The court also ordered Mr. Ilas to pay $2,000 towards the attorney fees incurred by his former wife.

## II. APPEALABILITY*

· · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## III. AWARD BASED ON EARNING CAPACITY INSTEAD OF ACTUAL EARNINGS

 Mr. Ilas asserts that the trial court may consider his earning capacity, as opposed to his actual earnings, only if the trial court finds a deliberate attempt on his part to avoid financial responsibilities by refusing to maintain or seek gainful employment. He cites *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115 [96 Cal.Rptr. 408]. In that case the court stated the applicable rules as follows: "Whether a modification is warranted depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown. . . . [¶] The general rule is that in any later modification proceeding the evidence must show a material change of circumstances subsequent to the last prior order. . . . [¶] . . . While it is true that an award of alimony and child support

---

[1] All section references are to the Civil Code unless otherwise indicated.

*See footnote, *ante*, page 1630.

may be based upon the husband's ability to earn as distinguished from his actual income, the rule seems to be applied only when it appears from the record that there is a deliberate attempt on the part of the husband to avoid his financial family responsibilities by refusing to seek or accept gainful employment [citation], wilfully refusing to secure or take a job [citations], deliberately not applying himself to his business [citation], intentionally depressing his income to an artificial low [citations], or intentionally leaving his employment to go into another business [citation]." (*Id.*, at pp. 119, 121.)

Mr. Ilas then argues that there is no evidence in the record here that he is deliberately seeking to avoid his responsibilities by attending medical school. Rather, he argues that he is improving himself by fulfilling a lifelong dream of attending medical school. He further contends that the trial court cannot consider his earning capacity without making a specific finding of intentional and deliberate conduct designed to avoid financial responsibilities.

The trial court made no such finding. Rather, it found that "child and spousal support constitute a priority overhead expense which must be taken into account whenever an obligor wishes to pursue a different lifestyle or endeavor. The court equates child and spousal support as an overhead which must be paid first before any other expenses. . . . The court finds that [Mr. Ilas] did not have the right to divest himself of his earning ability at the expense of [the former Mrs. Ilas] and his two minor children."

The issue thus presented is whether a finding of deliberate and intentional conduct designed to avoid financial responsibilities is required before the trial court can consider earning capacity instead of actual earnings.

The parties have cited the applicable cases in support of their respective contentions. These include *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367 [263 Cal.Rptr. 243], *In re Marriage of Everett* (1990) 220 Cal.App.3d 846 [269 Cal.Rptr. 917] and *In re Marriage of Williams* (1984) 155 Cal.App.3d 57 [202 Cal.Rptr. 10].

Since the briefs were filed, two other cases have discussed this issue. In *In re Marriage of Simpson* (1992) 4 Cal.4th 225 [14 Cal.Rptr.2d 411, 841 P.2d 931], the former husband argued that, under *Philbin*, the trial court could consider earning capacity, as opposed to actual income, only in instances "in which the supporting spouse deliberately suppresses income for the purpose of avoiding support obligations." (*Id.*, at p. 233.) The Supreme Court did not decide the issue because the trial court had specifically found that the husband there had deliberately shifted to lower-paying work to shirk his

family obligations, and the finding was supported by substantial evidence. (*Id.*, at pp. 233-234.) Accordingly, the court held that the trial court's decision to consider earning capacity was not an abuse of discretion. (*Id.*, at p. 234)

The court agreed with the husband that the earning capacity calculation should be based upon an objectively reasonable work regimen, rather than the extraordinarily heavy work schedule followed by the husband during the marriage. (*In re Marriage of Simpson, supra,* 4 Cal.4th at p. 235.) Since the trial court did not properly calculate earning capacity under this standard, the judgment was reversed and the case remanded for recalculation.

The second new case is *In re Marriage of Meegan* (1992) 11 Cal.App.4th 156 [13 Cal.Rptr.2d 799]. In that case, a husband quit a high-paying job to enter a monastery. The trial court found that the husband did not quit his job to avoid his spousal support obligation, and that he was acting in good faith. Accordingly, it granted the husband's request to reduce his spousal support to zero.

On appeal, our colleagues in Division Three affirmed. The determination of good faith was a credibility determination, and there was uncontroverted evidence supporting it. The wife then argued that spousal support should be based on earning capacity, rather than actual earnings. The court declined to do so because of the finding that the husband acted in good faith. It cited and relied on the *Regnery* and *Philbin* rules. (*In re Marriage of Meegan, supra,* 11 Cal.App.4th at p. 163.)

In *Regnery*, the court considered the effect of the passage of the Agnos Child Support Standards Act of 1984 on the *Philbin* rule. The court said: "We find the Act to be consistent with previous decisional law and the reading of the two together creates a three-prong test before the capacity to earn standard may be applied. Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire. [Citations] [¶] If all three factors are present, the court must apply the earning capacity standard to derive the mandatory minimum support payment to the extent the application is consistent with the needs of the child. The court may also take a parent's ability to pay into account in setting an amount greater than the mandatory minimum. When the ability to work or the opportunity to work is lacking, earning capacity is absent and application of the standard is inappropriate. When the payor is *unwilling* to pay and the other two factors are present, the

court may apply the earnings capacity standard to deter the shirking of one's family obligations." (*In re Marriage of Regnery, supra,* 214 Cal.App.3d 1367, 1372-1373.) In that case, the father voluntarily left his employment and remained unemployed. Despite his contention that he had made genuine efforts to find employment in his field, the court found that the evidence supported the trial court's implied finding that his avoidance of family financial responsibilities was deliberate. (*Id.,* at p. 1376.) Accordingly, his capacity to earn was properly considered in setting the support level.

In *Everett,* the father lost his job due to drinking problems. His former wife argued that he was underemployed in his current job and his earning capacity should be considered because he was not seeking more lucrative employment. The appellate court rejected this contention, stating the applicable rules as follows: "Historically, courts have focussed on earning capacity in fashioning child support awards in limited situations where the record demonstrated that the parent was shirking parental responsibilities by refusing to accept or seek gainful employment. [Citations.] The Agnos Act now permits attribution of 'earning capacity' to an unemployed or underemployed parent without specifically narrowing such consideration to deliberate attempts to foil support obligations. . . . Thus, under the Agnos Act, the court must consider the earning capacity of a given parent where (1) there is some measurable capacity and (2) it would be in the children's best interests to do so." (*In re Marriage of Everett, supra,* 220 Cal.App.3d 846, 859.) The court approved the *Regnery* test, commenting that "[w]hen it comes to the noncustodial supporting parent, deliberate avoidance of family responsibilities is still significant to the earning capacity consideration." (*Id.,* at p. 860.) The court held that the trial court did not abuse its discretion in refusing to impute additional income to the father under an earning capacity test. (*Id.,* at p. 862.)

In *Williams,* the former husband quit his job and moved with his new wife to another state to seek a simpler and less expensive lifestyle. The court quoted *Philbin* and then stated that its test "is not imposed unless there is some conduct by the supporting spouse indicating deliberate behavior designed to avoid his financial responsibilities to his children." (*In re Marriage of Williams, supra,* 155 Cal.App.3d 57, 62.) The trial court believed the former husband's testimony, and declined to apply the earning capacity standard. The appellate court affirmed.

With regard to spousal support, section 4801, subdivision (a) provides that the court must consider "(1) The extent to which the earning capacity of each spouse is sufficient to maintain the standard of living established during the marriage . . . . [¶] (3) The ability to pay of the supporting spouse, taking

into account the supporting spouse's earning capacity, earned and unearned income, assets, and standard of living."

With regard to child support, section 4720.2, subdivision (g)(2) now provides that: "The court may, in its discretion, consider the earning capacity of a parent in lieu of that parent's income, consistent with the best interests of the child." This section "appears to alter the historically punitive nature of such a consideration, mandating it 'to the extent consistent with the best interests of the child . . . .' ■ Indeed, consideration of earning capacity appears to be one of the very few areas in the Act where the trial court has some discretionary input in the otherwise lockstep computation and allocation of the minimum award." (*In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 973 [236 Cal.Rptr. 706]; see, generally, Hogoboom & King, Cal. Practice Guide, Family Law 1 (The Rutter Group 1992) ¶¶ 6:40–6:40.20, pp. 6-80–6-87.)

■ We agree with *Nolte* that the act changed the *Philbin* rule, which used the earning capacity standard to punish the person who made a deliberate attempt to avoid his or her support obligations. As *Everett* states, "The Agnos Act now permits attribution of 'earning capacity' to an unemployed or underemployed parent without specifically narrowing such consideration to deliberate attempts to foil support obligations." (*In re Marriage of Everett*, *supra*, 220 Cal.App.3d 846, 859.) Even though our Supreme Court did not reach this issue in *Simpson*, it cited the definition of earning capacity in *Everett* and *Regnery* with approval. (*In re Marriage of Simpson*, *supra*, 4 Cal.4th 225, 234.)

Under the *Regnery* test, the court considers the spouse's ability to work, willingness to work, and opportunity to work. When, as here, ability and opportunity are present, and willingness is absent, the court has the discretion to apply the earnings capacity standard. (Cf. *Pencovic v. Pencovic* (1955) 45 Cal.2d 97 [287 Cal.Rptr. 501] [the earning capacity standard is properly used when the paying parent willfully refuses to seek or accept gainful employment].) The court exercised that discretion here, and we find no abuse of discretion in applying the earnings capacity test here.

■ We thus disagree with the suggestion of our colleagues in *Meegan* that a finding of good faith prevents use of the earning capacity standard. (*In re Marriage of Meegan*, *supra*, 11 Cal.App.4th 156, 163.) While deliberate avoidance of family responsibilities is a significant factor in the decision to consider earning capacity (*In re Marriage of Everett*, *supra*, 220 Cal.App.3d 846, 860), the statute explicitly authorizes consideration of earning capacity in all cases. (§ 4801, subd. (a)(1).) Accordingly, the trial court's consider-

ation of earning capacity is not limited to cases in which a deliberate attempt to avoid support responsibilities is found.

We also agree with the trial court that "[Mr. Ilas] did not have the right to divest himself of his earning ability at the expense of [the former Mrs. Ilas] and his two minor children. [Mr. Ilas] may wish to undertake and pursue and continue to pursue his acquisition of a medical doctorate degree, but he must also continue to pay his child and spousal support."

## IV. ORDER FOR POSTING OF SECURITY*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## V. THE AMOUNT OF THE SECURITY

Mr. Ilas also raises an interesting question of whether the $6,000 limit of section 4701.1, subdivision (c) is an overall limit or a limit per child. Here, the trial court stated that it was making its award on a per-child basis. The trial court erred.

The statute defines the amount to be deposited as follows: "In all instances, the assets shall include a sum of money up to or equal in value to one year of support payments or six thousand dollars ($6,000) whichever is less, or any other assets, personal or real, designated by the court which equal in value up to one year of payments for support of the minor child, or six thousand dollars ($6,000), whichever is less . . . ." Subdivision (a) of that section also refers to "any amount for the support of a minor child."

The trial court interpreted these provisions to mean one year of support payments for each child or $12,000. This interpretation is erroneous. Since Mr. Ilas's total child support obligation per year is $9,072 ($378 × 2 = $756 × 12 = $9,072) for both children, the award should have been $6,000. Even if considered on a per child basis, the award should have been $9,072 ($378 × 12 = $4,536 + $4,536 = $9,072).[6]

Despite the trial court's erroneous interpretation, we find it unnecessary to correct it. Mr. Ilas invited the error in his moving papers when he told the

---

*See footnote, *ante*, page 1630.

[6]We are inclined to agree with Mr. Ilas that the section refers to the total amount of the child support obligation for all children. Section 4710, the newer and more liberal section, refers to an amount "up to one year's child support or such lesser amount as is equal to the child support amount due to be paid by the child support obligor between the time of the date of the order and the date when the support obligation shall be terminated by operation of law." (§ 4710, subd. (a).) Other references in that section to "child or children" suggest that

court that the case of *Taylor* v. *Superior Court* (1990) 218 Cal.App.3d 1185 [267 Cal.Rptr. 519] stood for the "position that the limitation on the amounts which can be deposited for future support is $6,000.00 for child support, and at the maximum, $6,000.00 for spousal support. [¶] If the Court is inclined to grant [the former Mrs. Ilas's] request that [Mr. Ilas] be required to make a security deposit for his future support obligations, it is submitted that the amount of the deposit cannot be in excess of $12,000.00."[7] Having invited the error, Mr. Ilas cannot profit from it.

■ As stated in *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489 [257 Cal.Rptr. 397], "It is settled that where a party by his conduct induces the commission of an error, under the doctrine of invited error he is estopped from asserting the alleged error as grounds for reversal." (*Id.*, at p. 501.)

■ The former Mrs. Ilas requested security in the sum of $39,558. This sum consisted of child support payments for each child until they reached the age of 18 and one year's spousal support payments, totalling $8,184. In the alternative, she sought one year's worth of child support payments ($9,072) plus one year's spousal support totalling $8,184. The trial court apparently accepted Mr. Ilas's argument that each of these amounts was limited to a maximum of $6,000, and the total amount which could be awarded was therefore $12,000. Thus, although the trial court stated that the amount was $6,000 per child, the trial court reached the amount specified by Mr. Ilas, but it gave the wrong reason.

The trial court clearly had the power to order security for spousal support payments under section 4801, subdivision (a)(10): "[T]he court may order the party required to make the payment of [spousal] support to give reasonable security therefor." An award of $6,000 for security for spousal support would have been less than the amount requested by the former Mrs. Ilas, and would have been in the exact amount stated by Mr. Ilas as the maximum allowable. We therefore interpret the order retaining $12,000 from Mr. Ilas's share of the proceeds of the sale of the home to be an order for $6,000 security for future child support under section 4701.1 and an order for $6,000 security for future spousal support under section 4801, subdivision (a). As such, the order was proper, and any error was invited error. (*In re Marriage of Broderick, supra,* 209 Cal.App.3d 489, 501-502.)

---

the amount is calculated on the basis of the total amount of the child support obligation payable by the obligor, regardless of the number of children involved.

[7]Actually, *Taylor* stands for the proposition that the mother had standing to seek her former husband to post security, notwithstanding her assignment of support rights to the county in order to receive welfare payments. The court then overturned the demurrer without reaching the merits.

## VI. AWARD OF ATTORNEY FEES*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

## VII. DISPOSITION

The order of January 24, 1991, is affirmed.

Dabney, Acting P. J., and Timlin, J. concurred.

---

*See footnote, *ante*, page 1630.