[No. B098165. Second Dist., Div. Seven. Sept. 22, 1997.]

In re the Marriage of DENISE and KEVIN C.
DENISE C., Appellant, v.
KEVIN C., Respondent.

**COUNSEL**

Ray T. McCullough for Appellant.

Kevin C., in pro. per., for Respondent.

**OPINION**

**NEAL, J.—**

### SUMMARY

In this family law action we hold that the curtailment of discretionary expenses of a noncustodial parent is not an "injustice" justifying a child

support award lower than required under the "Statewide Uniform Guidelines For Determining Child Support." We reverse the trial court's order with directions to enter a new, different support order consistent with the guidelines.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner and appellant Denise C. (Denise) appeals from the trial court's October 10, 1995, order requiring her former spouse, respondent Kevin C. (Kevin), to pay less monthly child support than presumptively required by the Statewide Uniform Guidelines For Determining Child Support (Guidelines), Family Code section 4055.[1] The couple has two daughters, aged twelve and six at the time of the order appealed from.

The amount of child support required by the Guidelines depends in part on the division of parental custodial responsibility. A noncustodial parent's support obligation increases as visitation time with the children is reduced.

At the time of the order appealed here, Kevin was spending only minimal time with his daughters. An investigation was under way into allegations that Kevin had sexually molested one of the girls. Although earlier, similar allegations apparently had been rejected, the allegations had resurfaced, and Kevin as of mid-1995 was limited by juvenile court order to one hour per week monitored visits with his daughters. Kevin's appeal brief, filed May 2, 1997, does not assert that fuller visitation rights have since been restored, nor that the more recent molestation allegations have been found false. Nor has Kevin sought to augment the record to include court orders or other evidence addressing these issues.

The Guidelines required support of $816 per month if Kevin had custody of the children 20 percent of the time, and $1,121 per month if Kevin had custody 1 percent of the time. The trial court acknowledged that Kevin had only 1 percent custody, but nonetheless set child support at $816 per month. The trial court rejected the $1,121 Guideline payment on the ground it provided Denise and the children with income substantially in excess of their expenses, while leaving Kevin with a shortfall of income versus expenses. The trial court explained: ". . . presumably the Legislature did not intend to create certain shortfalls in a payor's [Kevin's] standard of living solely for the purpose of providing absolute windfalls to the payee parent's [Denise] and children's standard of living . . . a child support order of $816 per month will allow Respondent to meet his monthly needs while yet providing petitioner and her children with a surplus of $833 over her and the children's

---

[1]All references to code sections in this opinion are to the California Family Code.

stated needs. Such a child support order is in the children's best interest, because to order a guidelines amount providing them with an even larger surplus while leaving Respondent unable to meet his own monthly cost of living would teach them disrespect for the fairness of the legislative and judicial branches of government."

The evidence before the trial court included standard form income and expense declarations for Denise and Kevin.[2] The form declarations show gross income, "net disposable income," and "monthly expenses." (As further explained below, "net disposable income" is gross income less taxes, mandatory employer deductions, and union dues.)

Denise's and Kevin's gross incomes, net disposable incomes, monthly expenses, and the impact of the 1 percent and 20 percent support payments on their respective finances, are shown in the following table:

|  | DENISE | KEVIN |
|---|---|---|
| Gross income | $4,400 | $3,975 |
| Net disposable income | 2,649 | 2,231 |
| Monthly expenses | 3,881 | 2,058 |
| Net monthly income before support payment | (1,232) | 173 |
| Net monthly income after $816 support payment (20% custody) | (416) | (643) |
| Net monthly income after $1,121 support payment (1% custody) | ($111) | ($948) |

Denise declared that she had a $1,596 monthly mortgage and that she had no savings, stocks, bonds, or other liquid assets. Kevin had no mortgage or rent expense and had $55,000 in stocks, bonds, or other liquid assets, although his declaration did not identify any income from these assets.

Kevin's declaration claimed as expenses $700 per month for food, $200 per month for clothing, $188 per month for educational seminars, and a total of $643 per month in automobile-related expenses, of which $88 per month was reimbursed by his employer.

---

[2]Kevin filed no declaration for the June 1995 hearing. The trial court's October 10, 1995, order indicates a declaration filed July 13, 1995, in support of Kevin's motion for reconsideration, was received and considered, but this declaration is not part of the record on appeal. The record does contain, however, Kevin's declaration filed in July 1994. The information in the July 1994 declaration is not materially different from the information referred to in the trial court's October 1995 order made after reconsideration.

DISCUSSION

Section 4057, subdivision (a) provides that the payment established by the Guidelines formula "is presumed to be the correct amount of child support to be ordered." Subdivision (b) provides as follows:

"The presumption of subdivision (a) . . . may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in Section 4053, because one or more of the following factors is found to be applicable by a preponderance of the evidence . . . :

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) Application of the formula would be unjust or inappropriate due to special circumstances in the particular case. These special circumstances include, but are not limited to, the following:

"(A) Cases in which parents have different time-sharing arrangements for different children.

"(B) Cases in which both parents have substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent.

"(C) Cases in which the children have special medical or other needs that could require child support that would be greater than the formula amount."

Section 4052 states: "The court shall adhere to the statewide uniform guideline and may depart from the guideline only in the special circumstances set forth in this article."

Section 4053, states the following principles among others:

"(a) A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(e) The guideline seeks to place the interests of children as the state's top priority.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(i) It is presumed that a parent having primary physical responsibility for the children contributes a significant portion of available resources for the support of the children.

"'. . . . . . . . . . . . . . . . . . . . . . .

"(k) The guideline is intended to be presumptively correct in all cases, and only under special circumstances should child support orders fall below the child support mandated by the guideline formula."

Several policy objectives and principles are apparent from these statutory provisions.

First, the guidelines indicate "the interests of children are the state's top priority." (§ 4053, subd. (e).)

Second, as the title and text of sections 4053, 4054, 4055, and 4056 indicate, the guidelines are intended to achieve *uniformity* among like cases. Similar treatment in similar cases, or evenhandedness, is an important dimension of justice.

Third, it is clear that protecting parental discretionary incomes or "standards of living" was *not* a statutory objective. None of the principles articulated in section 4053 include protection of parental living standards. Further, the Guideline formula does not vary the quantum of support depending on whether parental discretionary spending is high or low.

The Guideline formula is as follows:

**CS = K [HN - (H%)(TN)]**

CS = the amount of child support.

K = the amount of parents' combined income to be allocated for child support; this is computed by a formula.

HN = the high earner's net monthly disposable income.

H% = the percentage of time the high earner has primary custody.

TN = the total net monthly disposable income of both parents.

Section 4059 governs calculation of "net disposable income." The calculation subtracts *nondiscretionary expenses* from gross income to reach "net disposable income." The subtracted expenses include state and federal taxes, employer deductions for a pension plan, mandatory union dues, and child or spousal support paid under court order. Only these *unavoidable* parental expenses are included in the formula. The Legislature recognized that these

expenses *must* be paid, reducing parental ability to pay child support. However, other, discretionary parental expenses are not reflected in the formula. The formula does not decrease the required support payment because the parent has a higher "standard of living," such as a more expensive car, home, etc.

■ In summary, the Legislature has established a strong presumption that parental *income levels*, coupled with *custodial time*, and not parental discretionary spending patterns, shall determine the level of family support, absent some special and unusual circumstances resulting in injustice. This approach assures that substantial portions of parental income shall be devoted to the "state's highest priority," children, and that children of less thrifty parents shall not suffer.

Here, the trial court did not find evidence of any special circumstance specifically identified in section 4057, subdivision (b)(5) to justify departure from the Guidelines. Instead, the trial court concluded that strict application of the formula would be unjust because it would provide Denise and the children with a "surplus" while reducing Kevin's standard of living.

This was incorrect both factually and legally.

First, the table above shows that a Guideline award of $1,121 per month would *not* provide Denise and the children with a "surplus," as the trial court concluded. Rather, it would merely reduce Denise's shortfall of income versus expense, while enlarging Kevin's.

The factual conclusion that the Guideline figure was "unjust" was further undermined by evidence that Denise had a $1,596 monthly mortgage, while Kevin had no mortgage or rent expense. Indeed, these facts arguably would have justified an *upward* adjustment in the Guideline amount, in favor of Denise, even if Kevin had shared 50 percent custody with the children. Section 4057, subdivision (b)(5)(B), one of the three "special circumstances" specifically identified as justifying a departure from the Guidelines, applies where "both parents have substantially equal time-sharing of the children *and one parent has a much lower or higher percentage of income used for housing than the other parent.*" (Italics added.)

Moreover, the evidence showed that Kevin had $55,000 in liquid assets, while Denise had none; and that Kevin's claimed living expenses included

substantial allocations for food, automobile, clothing, and "educational seminars."[3] These facts, too, militated against the conclusion that the Guidelines figure was "unjust."

Second, it was legally incorrect to conclude that a modest reduction in standard of living constitutes "special circumstances" warranting departure from the Guidelines. Such a reduction is a not a circumstance the statute identifies as warranting a departure. As shown above, the statute establishes a scheme under which child support levels do not depend on parental discretionary spending levels. The Legislature did not intend that children of less frugal parents survive on reduced support payments to accommodate a higher parental living standard.

Virtually every child support order diminishes the living standard of the payor parent. If this reduction were viewed as a "special circumstance" which warrants departure from the Guidelines, then the legislated presumption of Guideline correctness would give way to an inquiry in numerous cases as to whether the particular reduction in living standard constitutes an "injustice." Uniformity would be undermined. Further, control of the outcome would lie, to a large extent, in the hands of the payor parent who, by increasing his or her level of discretionary expenditures, could increase the quantum of "injustice" allegedly caused by the support award.

Nor is it "unjust" that the presumptive support payment is increased because the payor parent's custodial share declines. The Legislature obviously considered such an increase to be just and proper, since it built it into the formula. The reason for so doing is sound: Both the fiscal and nonfiscal burdens of parenthood increase in proportion to the extent they are not shared with another parent. Here, Denise must shoulder virtually the entire nonfiscal burden of raising the girls, and her fiscal burdens as well are likely increased by having the girls 99 percent of the time. An increased support payment helps to mitigate these burdens.

We conclude that the trial court abused its discretion in departing from the Guideline custody support payment level.

## DISPOSITION

The order is reversed. The cause is remanded, and the trial court is directed to enter a new order, setting support payments at the Guideline

---

[3]We do not suggest that these are particularly extravagant levels of spending, and we do not downplay the economic hardship that divorce works upon families of modest means. Nonetheless, the statutory scheme seeks to mitigate the impact of this hardship on the *children.*

level, retroactive to May 15, 1995, effective date of the trial court's deviation from the Guidelines. The trial court shall reflect in its calculation of retroactive payments due any changes in percentage of custodial time which have occurred since May 15, 1995. Petitioner shall recover her costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.