[No. F034054. Fifth Dist. June 25, 2001.]

In re the Marriage of DEBRA D. SMITH and MICHAEL STEVEN SMITH.
DEBRA D. SMITH, Appellant, v.
MICHAEL STEVEN SMITH, Respondent.

[No. F034080. Fifth Dist. June 25, 2001.]

COUNTY OF KERN, Plaintiff and Appellant, v.
KEVIN RAY POLSTON, Defendant and Respondent.

[No. F035091. Fifth Dist. June 25, 2001.]

COUNTY OF MERCED, Plaintiff and Respondent, v.
CHARLES BRYNER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Ann White, M. J. Hamilton, Deputy Attorneys General; Edward R. Jagels, District Attorney, and Keith H. Cramer, Deputy District Attorney, for Appellant in No. F034054 and for Plaintiff and Appellant in No. F034080.

Charles Bryner, in pro. per., for Defendant and Appellant in No. F035091.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, and M. J. Hamilton, Deputy Attorney General, for Plaintiff and Respondent in No. F035091.

Jay C. Smith for Respondent in No. F034054.

No appearance for Defendant and Respondent in No. F034080.

## OPINION

**BUCKLEY, J.**—The statewide uniform guideline for determining child support permits the court, in lieu of using actual income, to impute income to a parent based on his or her earning capacity. Earning capacity, in turn, requires that the parent have both the ability and the opportunity to work. In *State of Oregon v. Vargas* (1999) 70 Cal.App.4th 1123 [83 Cal.Rptr.2d 229], we held this same earning capacity test applies whether or not the parent is incarcerated, and thus the court may not impute income to an incarcerated parent who has no opportunity to work in prison and no other assets with which to pay support. We declined to create a blanket "incarcerated parent" exception to the statutory guideline. We are asked here to revisit *Vargas* and create a somewhat more narrow exception that would permit the court to consider, in addition to the parent's ability and opportunity to work, the nature of the offense for which he or she is incarcerated. Again, we decline.

Since these three appeals all raise the same issue, we consider them together for purposes of oral argument and decision.

### FACTS AND PROCEEDINGS

#### *In re Marriage of Smith*

Michael Steven and Debra D. Smith separated in 1997 after 16 years of marriage. Their two children, twin boys, were 14 years old at the time. Michael filed a dissolution petition in November, and the following June he requested a disposition consistent with a marital settlement agreement (MSA) signed by the parties the same time. Judgment was entered accordingly on July 30, 1998.

The MSA noted Michael had been suspended from his job, and so had no income with which to pay child support. However, he agreed to give Debra

his one-half interest, $22,500, in a 401(k) retirement plan. This amount was to be credited toward his support obligation at the rate of $2,566 per month, until exhausted. The $2,566 figure, in turn, was based on the assumption Michael was still working at his job, and that Debra was not working. Both circumstances would change shortly.

Michael had been arrested in May of 1998 for sending child pornography over the Internet. He pleaded guilty to the charge in December and began serving a 21-month term in federal prison in January of 1999. The money from his retirement plan ran out in February. Debra had, by then, obtained a license to operate a residential care facility in her home, and had started accepting clients.

In view of these changes, the County of Kern filed a motion in January of 1999 to modify Michael's child support obligation.[1] Michael testified, by telephone, at a hearing in March that he had no job in prison and was unable to pay anything. The county argued his obligation should continue nonetheless because he, rather than his family, should bear the burden of his criminal act. The court, mindful of our recent decision in *Vargas*, concluded Michael had "zero earning capacity" and therefore suspended his support obligation effective March 1, 1999. The county appealed.

### County of Kern v. Polston

The County of Kern filed a complaint against Kevin Ray Polston for child support in September of 1997. He and his wife Wendy had separated several months earlier. In a default judgment entered in February of the following year, Kevin was ordered to pay Wendy child support for their two daughters in the total amount of $607 per month. Three months later in May, Kevin was convicted by plea of molesting the older daughter, and was sentenced to prison. Apparently, he made several unsuccessful attempts from prison to file a motion to modify the support order. When it learned of his efforts, the county filed a motion in June of 1999 seeking a preemptive determination that Kevin's incarceration was *not* a sufficient ground for modification. Kevin succeeded in filing his motion the same month, and the two matters were set for a hearing on July 30, 1999.

Kevin testified, by telephone, at the hearing that he had no job and no immediate prospect of a job in prison, nor any property or other assets with

---

[1]Former sections 11350, 11350.1, and 11475.1 of the Welfare and Institutions Code (see now Fam. Code, §§ 4002, 17400, 17402, 17404) authorize the local district attorney to prosecute actions for child support in the name of the county on behalf of the child or children of the custodial parent, and to recover arrearages in support payments. (See *In re Marriage of Comer* (1996) 14 Cal.4th 504, 512, fn. 3 [59 Cal.Rptr.2d 155, 927 P.2d 265].)

which to pay child support. Nonetheless, the county argued Kevin should not be allowed to benefit from his criminal act by being relieved of his duty to support his children while incarcerated. The court, although it expressed "some misgivings" about the law, concluded it was required to base its determination on Kevin's present ability to pay. Accordingly the court, in effect, granted Kevin's motion and reduced his support obligation to zero.[2] The county appealed.

### County of Merced v. Bryner

Charles and Helen Bryner have one child, a daughter born in 1984. It appears Helen has at least two other, older children from a previous relationship who also lived with the couple at one time. In 1993, Charles was convicted of molesting one of these other children and sent to state prison.[3] Around this same time, Helen began receiving Aid to Families With Dependent Children in Merced County for their daughter.

In 1994, the county filed a complaint against Charles for ongoing child support and reimbursement of the public assistance already paid on the daughter's behalf. A default judgment was entered against Charles, but the court reserved jurisdiction to determine the amounts. In 1996, the court ordered Charles to pay $101 per month in child support and an additional $35 per month toward arrearages then totalling $3,737. These amounts were based on the pretense Charles had a regular, full-time job in prison paying the minimum wage.

In August of 1999, the county filed an order to show cause for modification of the existing support order. It alleged Charles, who was still in prison, was $7,474 in arrears as of the end of June, and owed an additional $1,743 in accumulated interest. In a responsive declaration, Charles reported he was earning 40 cents an hour in the prison laundry and had a net monthly income of only $67, less expenses of $70. Charles also filed a motion seeking appointment of counsel.

These matters came to a hearing in November. The county explained its purpose in seeking the support modification was to reduce Charles's obligation to zero in keeping with our decision in *Vargas*, which had been filed the

---

[2] The court's order simply stated Kevin had "zero ability to pay support." It did not expressly modify or suspend the existing support order, but reserved the issue so it might reevaluate his financial circumstances in the future.

[3] As Charles notes, nothing in the original record on appeal identifies the crime for which he is incarcerated. However, the record was later augmented at the county's request to include the reporter's transcript for the November 5, 1999, hearing. Helen, who was not under oath, stated at the hearing that Charles was convicted of molesting her oldest daughter.

previous March.[4] Helen appeared at the hearing to oppose any reduction. Charles did not appear, either in person or by telephone. The court stated it was familiar with *Vargas*, but explained it was inclined nonetheless "to impute some kind of earning capacity under these circumstances," i.e., where the noncustodial parent's incarceration was "related to an act that was against the child or one of the children living with the parties."[5] It continued the hearing to permit Charles to address this particular issue.

The court denied Charles's request for counsel "subject to reconsideration" because it found it had no authority to appoint counsel under the circumstances.

The continued hearing was held on January 11, 2000. Charles did not appear. He had filed a declaration following the November hearing, but it did not address the specific issue raised by the court.[6] According to its subsequent order, the court found "an exception to the Vargas case in that the crime for which [defendant] is incarcerated was committed against this family." (Capitalization omitted.) The exception evidently was based on a theory of estoppel. The court therefore refused to reduce Charles's child support obligation, but rather continued the existing order requiring him to pay $101 per month. It ordered that interest would not accrue on the arrearages, nor would Charles be required to pay them, until his release from custody. Charles appealed. We subsequently denied his request for appointment of counsel on appeal.

For purposes of the following discussion, we refer to the counties collectively and consider their arguments together.

DISCUSSION

### I.  *Our Vargas Decision*

██  California has implemented a "statewide uniform guideline" for determining child support according to a complex algebraic formula based on the parents' incomes and custodial time with the child. (Fam. Code,

---

[4]In the reporter's transcript of the November hearing, the county and the court both referred to the case as "Ruiz." It appears from context, however, that they meant *Vargas*.

[5]We note *Vargas* also was a case from Merced County, where the court likewise imputed the minimum wage to an incarcerated father. The record on appeal in *Vargas* failed to disclose the crime for which the father was imprisoned.

[6]The court's order following the November hearing said nothing about creating an exception to *Vargas* based on the nature of Bryner's offense. It invited him only to explain why the court should not "impute a minimum wage earning ability." (Capitalization omitted.) Bryner's response did address that issue.

§ 4050 et seq.[7]; see generally Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2001) ¶ 6:130 et seq., p. 6-55 (rev. #1, 1998).) The formula amount is rebuttably presumed to be correct; the court may depart from it only upon a finding, by a preponderance of the evidence, that one of five enumerated factors pertains. These factors generally apply in situations where "application of the formula would be unjust or inappropriate in the particular case" (§ 4057, subd. (b)), consistent with certain principles set out in section 4053. The principles recognize, among other things, that a parent's primary obligation is to support his or her minor children, that the interests of children are the state's top priority, and that "[e]ach parent should pay for the support of the children according to his or her ability." (§ 4053, subd. (d).)

Thus, the court no longer has the broad discretion in ordering child support it had prior to adoption of the support guideline in 1992. (*In re Marriage of Carter* (1994) 26 Cal.App.4th 1024, 1028 [33 Cal.Rptr.2d 1].) "[The] determination of a child support obligation is a highly regulated area of the law, and the only discretion the trial court possesses is the discretion provided by statute or rule." (*In re Marriage of Butler & Gill* (1997) 53 Cal.App.4th 462, 465 [61 Cal.Rptr.2d 781]; see also *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1159 [62 Cal.Rptr.2d 466].)

Among other things, the statute gives the court the discretion, in applying the guideline formula, to impute income to a parent based on his or her "earning capacity," in lieu of considering the parent's actual income. (§ 4058, subd. (b).) Historically, prior to adoption of the guideline, the exercise of this discretion was limited to situations where the parent was found to be deliberately shirking family responsibilities by refusing to seek or accept gainful employment. (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 994-995 [64 Cal.Rptr.2d 383]; *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1371 [263 Cal.Rptr. 243].) No such limitation exists under the present scheme, however. (*In re Marriage of Hinman, supra,* 12 Cal.App.4th at p. 998; *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1218 [45 Cal.Rptr.2d 555].) "While deliberate avoidance of family responsibilities is a significant factor in the decision to consider earning capacity [citation], the statute explicitly authorizes consideration of earning capacity in all cases," consistent with the child's best interests. (*In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1638 [16 Cal.Rptr.2d 345]; see also *Moss v. Superior Court* (1998) 17 Cal.4th 396, 424 [71 Cal.Rptr.2d 215, 950 P.2d 59].)

Although the guideline expanded the circumstances under which the court may consider a parent's earning capacity, it did not change the accepted

---

[7]Unless noted otherwise, all further statutory citations refer to the Family Code.

meaning of the term. "Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire. [Citations.] [¶] . . . When the ability to work or the opportunity to work is lacking, earning capacity is absent and application of the standard is inappropriate. When the payor is *unwilling* to pay and the other two factors are present, the court may apply the earnings capacity standard to deter the shirking of one's family obligations." (*In re Marriage of Regnery, supra,* 214 Cal.App.3d at pp. 1372-1373.)

Thus, " 'the only limitations against imputing income to an unemployed or underemployed parent is where the parent in fact has *no* "earning capacity" . . . or relying on earning capacity would not be consistent with the children's best interests.' " (*In re Marriage of Hinman, supra,* 55 Cal.App.4th at p. 998.)

The "opportunity to work" exists when there is substantial evidence of a reasonable "likelihood that a party could, with reasonable effort, apply his or her education, skills and training to produce income." (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 930 [76 Cal.Rptr.2d 866].) "[F]igures for earning capacity cannot be drawn from thin air; they must have some tangible evidentiary foundation." (*Id.* at p. 931.) "To calculate support based on the hypothetical procurement of a job which the evidence showed was not available to [the parent] would effectively write the 'opportunity' element of earning capacity out of existence." (*Id.* at p. 930.)

■ In consideration of these principles, we held in *Vargas* that a court may not impute income to an incarcerated parent in the absence of evidence he or she has both the ability and the opportunity to work in prison.

"In our opinion, *Regnery* and its progeny dictate that both elements of the earning capacity standard must be satisfied *regardless of the situation in which it is applied.* If either element is not established, earning capacity cannot be substituted for actual income. Thus, if appellant does not have an opportunity to work, whether in prison or not, the earning capacity test is not satisfied and cannot be used to determine his child support payments. In so holding, we are not unmindful of the policy arguments that can be made to support an opposite result for incarcerated parents. Nor are we unaware of jurisdictions that have found parents liable for child support despite their lack of earning capacity during incarceration. But unlike most courts, we are here confronted with a threshold test that clearly must be satisfied before

earning capacity can be used. . . . Furthermore, we emphasize that our holding today in no way suggests that incarcerated parents are exempt from child support. Rather, we simply decline to carve an exception to the rule that before earning capacity can be applied, its definition must first be satisfied. As with any other parent, the court must determine whether an incarcerated parent has the ability and the *opportunity* to work before using earning capacity to assess child support payments." (*State of Oregon v. Vargas, supra,* 70 Cal.App.4th at p. 1127.) Further, the determination must be based on the parent's *current* circumstances. It is not enough that the parent had a job prior to incarceration, or is likely to return to work upon release. (*Ibid.*) Accordingly, we remanded the matter to the trial court to determine whether the parent had assets, income, or employment opportunities in prison with which to meet his support obligation.

■ In the three cases now before us we are asked to create a "public policy exception" to the rule we stated in *Vargas.* This "exception" would allow the trial court to do what we plainly said in *Vargas* it could not do: hold an incarcerated parent liable for ongoing child support even though he or she lacks the capacity to earn money in prison and has no other financial assets. The court presumably could invoke the exception whenever it found the parent's offense was such that he or she was not deserving of relief from an existing, preincarceration support order. The counties argue the exception should have been applied in the present cases because the victim was a child for whom support was owed (Polston), the victim was an unrelated child living in the same household (Bryner), or the crime was particularly "heinous" (Smith).

This argument—that an incarcerated parent should not benefit from his criminal conduct at his child's expense—is a shorthand statement of the rationale that has been adopted by the courts of some other states in holding that incarceration is not a sufficient justification for modifying an existing support order (the "no justification" rule).[8] They analogize incarceration to voluntary unemployment. One court has stated the rule more fully as follows. " 'A parent cannot, by intentional conduct or mere irresponsibility,

---

[8]At oral argument, counsel for Kern County sought to distinguish the present cases, because they involve a request to modify an existing support order, from *Vargas,* which involved an initial determination of the noncustodial parent's support obligation. As a general rule, a court will not modify an existing order unless there has been a "material change in circumstances." (*Philbin v. Philbin* (1971) 19 Cal.App.3d 115, 119 [96 Cal.Rptr. 408].) As noted, most of the out-of-state "no justification" decisions upon which counsel relies arose in modification actions, and hold as a matter of law that loss of income due to incarceration is not such a change.

In this state, when child support is determined based on earning capacity, courts typically have not approached modification actions in terms of changed circumstances. This would seem to be so because the court must decide initially *whether* circumstances have changed, i.e., whether the parent has voluntarily limited his or her income such that it is appropriate to

seek relief from this duty of support. Defendant, who by his own wrongful conduct placed himself in a position that he is no longer available for gainful employment, is not entitled to relief from his obligation to support his child. Incarceration was a foreseeable result of his criminal conduct and is thus deemed a voluntary act in and of itself.' " (*Richardson v. Ballard* (1996) 113 Ohio App.3d 552 [681 N.E.2d 507, 508]; see also *Mooney v. Brennan* (1993) 257 Mont. 197 [848 P.2d 1020, 1022-1023, 27 A.L.R.5th 875]; *Willis v. Willis* (1991) 109 Or.App. 584 [820 P.2d 858, 860].)

The no justification rule, and the alternative approaches taken by other states, all have been applied to the *entire class* of incarcerated parents, not only to those who have committed certain types of crimes. (For a general review of the different approaches, see *Halliwell v. Halliwell* (1999) 326 N.J. Super. 442 [741 A.2d 638, 644-645]; *Matter of Marriage of Thurmond* (1998) 265 Kan. 715 [962 P.2d 1064, 1068-1072]; Annot., Loss of Income Due to Incarceration as Affecting Child Support Obligation (1995) 27 A.L.R.5th 540.) We acknowledged the existence of the no justification rule in *Vargas* and, for the reasons set out in the passage quoted above, we declined to apply it. To the extent we are now being asked to change our position, we decline once again.

Some other states have taken the position incarceration is one of several factors a court may consider in determining a parent's support obligation (the "one factor" rule). (See, e.g., *In re Marriage of Burbridge* (2000) 37 Ill.App.3d 190 [250 Ill.Dec. 510, 738 N.E.2d 979, 982]; *Thomasson v. Johnson* (1995) 120 N.M. 512 [903 P.2d 254, 256-257]; *In re Marriage of Hamilton* (Colo.Ct.App. 1993) 857 P.2d 542, 544.) But no court, at least so far as we have been able to determine, has ever said an incarcerated parent with no assets or earning capacity may nevertheless be denied relief from an existing support order solely because, for example, he committed a crime against his own child.

The counties cite us to two cases where the father was incarcerated for sexually abusing his daughter or stepdaughter. However, in neither case did the nature of the father's crime factor into the court's decision. In *Knight v.*

substitute earning capacity. If so, the *amount* of income has not changed for purposes of the support guideline, only its character (from actual income to imputed income). (See, e.g., *In re Marriage of Ilas, supra,* 12 Cal.App.4th 1630; *In re Marriage of Regnery, supra,* 214 Cal.App.3d 1367.)

The "no justification" approach simply sidesteps this determination and holds that incarceration is *never* a changed circumstance. In *Vargas,* we rejected this approach and held the court cannot impute income to someone who has no earning capacity, even when that is due to his or her incarceration. We see no reason why this should be any different when support is modified than when it is initially established.

*Knight* (Tenn.Ct.App. 1999) 11 S.W.3d 898, the court vacated a divorce judgment because the trial court had failed to consider the father's request either that he be transported to the hearing or that the hearing be postponed until his release from prison. The trial court had reserved the issue of child support until the father's release. In *Barnaby v. Barnaby* (1999) 259 A.D.2d 870 [686 N.Y.S.2d 230], the court affirmed the part of a divorce judgment that required the father to pay child support arrearages, some of which had accrued while he was in prison. The father had *not* appealed from the original support order that resulted in the arrearages, and so the order had long since become final.

We have found one case that, while it comes closer to the position advocated here, does not go as far. In *In re Marriage of Phillips* (Iowa Ct.App. 1992) 493 N.W.2d 872, the father was incarcerated for sexually abusing his stepdaughter and sought modification of an existing child support order based on his loss of income. The court, after reviewing the three approaches taken by other courts, determined that incarceration was not a change in circumstances warranting modification (the no justification rule). It then commented that the rule seemed especially apt in light of the father's crime. (*Id.* at p. 878.) However, as noted above, in those states that have adopted it, the rule is applied to *all* incarcerated parents and is not dependent on the nature of the parent's offense.

In any event, the one factor rule is inconsistent with our decision in *Vargas* insofar as it permits the trial court to consider matters that do not bear directly on an incarcerated parent's ability and opportunity to earn money in prison, or on the current availability of other assets he or she could utilize to pay child support.[9] We repeat: "[B]oth elements of the earning capacity standard [ability and opportunity] must be satisfied *regardless of the situation in which it is applied.* If either element is not established, earning capacity cannot be substituted for actual income. Thus, if [a parent] does not have an opportunity to work, whether in prison or not, the earning capacity test is not satisfied and cannot be used to determine his child support payments." (*State of Oregon v. Vargas, supra,* 70 Cal.App.4th at p. 1127.) We meant what we said. The reason the parent is incarcerated is not relevant to this determination.

Finally, we briefly address the counties' contention that the rule stated in *Vargas* is itself an exception to the statutory support guideline. As we noted

---

[9]The third approach adopted in some states is generally described as the "complete justification" rule. This is something of a misnomer, however, because few if any states have gone so far as to say that incarceration alone will justify modification of an existing support order. Most require, at the very least, that the court also inquire into whether an incarcerated parent has other income or assets, apart from prison earnings, with which to pay child support. (See, e.g., *Matter of Marriage of Blickenstaff* (1993) 71 Wash.App. 489 [859 P.2d 646, 651]; *Nab v. Nab* (1988) 114 Idaho 512 [757 P.2d 1231, 1238].)

above, the amount of support determined by the guideline formula is rebuttably presumed to be correct, but the court may order a different amount if it finds that one of several specific factors exists, or more generally that "[a]pplication of the formula would be unjust or inappropriate due to special circumstances in the particular case." (§ 4057, subd. (b)(5).) If it departs from the formula amount, the court must state its reasons in writing or on the record. (§ 4056.)

The counties note a parent's incarceration is not one of the listed factors. They appear in this way to be trying to add weight to their argument by suggesting we did in *Vargas* what the Legislature has not seen fit to do, i.e., create a blanket exception to the guideline amount for incarcerated parents.[10] Of course, just the opposite is true. The crux of our decision in *Vargas* was not that incarcerated parents may be treated differently than other parents for purposes of imputing income, but that they must be treated the same. (See *In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1336-1337 [66 Cal.Rptr.2d 393] [imputation of income is an exercise of the court's discretion under § 4058, subd. (b), not a departure from the guidelines under § 4057, subd. (b)].) It is the counties that seek to create an "incarcerated parent exception" to the guideline on the basis it would be "unjust or inappropriate" to allow them to avoid their support obligation while they are in custody. Indeed, they would go even farther to say the exception may be applied to some parents and not to others depending on the nature of their crimes.[11] For the reasons we have discussed, we decline to create any such exception. Moreover, we urge the counties and the Attorney General to consider more carefully in the future the propriety of advocating a position on appeal that is so clearly contrary to our published decision on the subject. (Cf. *City and County of San Francisco v. Miller* (1996) 49 Cal.App.4th 866 [56 Cal.Rptr.2d 887].)

## II.   *Other Issues**

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

---

[10]Counsel for Kern County also asserted at oral argument that the state Legislature recently considered, but failed to pass, a bill that would have done by statute what he would have us do here by judicial decision, i.e., declare as a matter of law that "changed circumstances" do not exist for purposes of modifying a child support order when the obligor parent has been incarcerated for certain types of crimes against his or her family. This fact, if true, only underscores our belief that any such change in the law must come from the legislative branch.

[11]Given our conclusion, we do not address Bryner's contention the court's order in his case violated his right to equal protection.

*See footnote, *ante*, page 74.

## DISPOSITIONS

The judgments in *In re Marriage of Smith* and *County of Kern v. Polston* are affirmed. The judgment in *County of Merced v. Bryner* is reversed. The parties shall bear their own costs.

Dibiaso, Acting P. J., and Wiseman, J., concurred.