Filed 7/7/23  Rybolt v. Riley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| COURTNEY RYBOLT, | |
| Respondent, | C088567 |
| v. | (Super. Ct. No. 10FL05692) |
| JAMES RILEY IV, | |
| Appellant. | |

Father, James Riley IV, appeals from an order increasing his monthly child support payments to mother, Courtney Rybolt.  Father argues the trial court erred because it:  (1) allowed testimonial hearsay through a vocational expert witness, in violation of *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*) and *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*); (2) permitted the vocational expert to testify, despite mother's failure to disclose the expert witness; (3) did not adequately consider the disparity in standard of living between the parties; and (4) incorrectly imputed earning ability to father using the vocational expert's testimony.  Disagreeing, we affirm.

BACKGROUND

In May 2017, father filed a motion in a paternity action asking to reduce the child support payments he was making to mother, which were then $182 per month.  Father

1

had a 32 percent timeshare with mother regarding their son. Mother filed a motion for a vocational evaluation, and in September 2017, the trial court appointed vocational rehabilitation expert Patrick Sullivan to evaluate father. Between July and October 2018, Sullivan and father had lengthy e-mail exchanges in which Sullivan attempted to arrange an interview with father for the evaluation. Father eventually said he would "rather not" participate in the evaluation, and Sullivan said he would "proceed without your cooperation."

Sullivan's vocational evaluation report explained he relied on "information extracted from various Income and Expense Declarations of Mr. Riley that were provided, copies of past earning records, review of [father's] website and other documents." He also reviewed findings and orders after hearing that the court had previously issued and payroll records attached to earlier income and expense declarations.

Before the evidentiary hearing on the motion, the trial court considered three motions in limine father filed. The first argued mother failed to disclose the vocational expert, the second argued the expert should be excluded under Evidence Code section 352, and the third argued the expert's testimony should be excluded under *Sanchez, supra*, 63 Cal.4th 665. At the November 2018 hearing, the court denied the three motions. As to the first motion, the court explained, "I suspect that you gave a notice, 'Tell me about the experts,' and they didn't comply. And – but you knew who it was."

Father, mother, and Sullivan testified at the hearing. Father also made an offer of proof that his sister would testify she had loaned him money to help pay for rent, food, and gas. Father testified he had been injured in a car accident and had a limited ability to work. Father rented an apartment for $500 per month; his mother paid the remainder. He acknowledged he attended Lincoln Law School for four years, and the tuition was

approximately $10,500 per year. Mother's counsel reviewed father's job history using his previously filed income and expense declarations.

Sullivan testified about the vocational evaluation he conducted of father. Father refused to participate in the evaluation process, and Sullivan relied on documents to get information about him, including documents obtained from mother, father's income and expense declarations, and copies of pay stubs. None of father's e-mails with Sullivan indicated father was disabled or involved in a car accident. Sullivan determined father was a legal document assistant and maintained a Website for a legal document preparation business. Father was qualified to work as a legal assistant, an executive assistant, and a sales representative in service or wholesale. The unemployment rate in Placer County was only three percent, so father would be able to find immediate employment in any of those fields. His highest earning capacity would be in the legal field, where the 50th percentile of income would be $50,000 per year. The 75th percentile would be $73,000.

Mother's counsel moved to admit the expert report into evidence, and father objected, citing *Sanchez, supra*, 63 Cal.4th 665. The court noted the expert's testimony appeared only to be that he looked at the specific records and based his opinion on those records. The court asked the expert whether anyone had told him anything that he relied on in forming his opinion, and the expert said he had not because the records provided by mother were "old information." The court observed that the expert's testimony seemed only to be describing the records he had relied on to form his opinion. Those records were already part of the court's records or were admitted into evidence, so the court admitted the report.

Mother testified she worked part time at Supercuts and also worked selling insurance and annuities. Her insurance sales were commission based. As of that year, she had made approximately $15,000 to $20,000. In 2017, her tax return indicated she had a loss of $3,418. Her children were eligible for Medi-Cal benefits. In 2016, mother

3

moved to a part-time position at Supercuts because she had a child and it was more economical for her to work part time than to pay daycare costs. She estimated she made approximately $1,500 per month, had monthly mortgage payments of $2,200, and grocery expenses of approximately $800 to $1,200 per month. She had three children, owned a home, and had two vehicles.

Father argued in closing that mother made more money than she was declaring on her income and expense declarations and argued there was a disparity in lifestyle between him and mother.

The court found that, based on the vocational expert's testimony, father had the ability to earn $4,166 per month. Father had no other children he supported, no union dues, no mandatory retirement, and no health insurance premiums. He had a 32 percent timeshare. The court considered mother's income and her husband's income and that she had two other children to support. Thus, the court calculated father's child support owed as $464 per month. The court stated the order would not take effect until January 1, 2019.

## DISCUSSION

### I

### *Expert Hearsay*

Father argues the vocational expert relayed hearsay evidence, including evidence of father's employers, income, and education, in his testimony, in violation of *Crawford, supra*, 541 U.S. 36 and *Sanchez, supra*, 63 Cal.4th 665. We disagree that the trial court erred.

"In [*Crawford, supra*, 541 U.S. 36], the United States Supreme Court held, with exceptions not relevant here, that the admission of testimonial hearsay against a criminal defendant violates the Sixth Amendment right to confront and cross-examine witnesses." (*Sanchez, supra*, 63 Cal.4th at p. 670.) In *Sanchez*, the California Supreme Court considered this rule as it applies to the introduction of expert testimony, concluding,

4

"[w]hen any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth. If the case is one in which a prosecution expert seeks to relate *testimonial* hearsay, there is a confrontation clause violation unless (1) there is a showing of unavailability and (2) the defendant had a prior opportunity for cross-examination or forfeited that right by wrongdoing." (*Id.* at p. 686, fn. omitted, original italics.)

"Any expert may still *rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so. Because the jury must independently evaluate the probative value of an expert's testimony, Evidence Code section 802 properly allows an expert to relate generally the kind and source of the 'matter' upon which his opinion rests . . . . There is a distinction to be made between allowing an expert to describe the type or source of the matter relied upon as opposed to presenting, as fact, case-specific hearsay that does not otherwise fall under a statutory exception." (*Sanchez, supra*, 63 Cal.4th at pp. 685-686, original italics.)

*Sanchez* was not violated.

The evidence the vocational expert discussed in his testimony fell within the parameters established by *Sanchez*. An expert is permitted to testify as to the basis of his or her opinion, even if that basis is hearsay. (Evid. Code, § 802; *Sanchez, supra*, 63 Cal.4th at p. 685.) Here, Sullivan merely explained which documents he relied on to form his opinion and did not relay any out-of-court statements. In fact, he told the court he had not relied on material he received from mother. And, as the court noted, the documents he did rely on were already within the court record or had already been admitted into evidence. Thus, the court did not err when it admitted Sullivan's testimony and report.

## II

### *Failure to Disclose Expert*

Father argues the trial court abused its discretion when it allowed the vocational expert to testify because mother failed to disclose the expert. We disagree.

"Upon the demand of any party, all parties must exchange written information about their expert trial witnesses. ([Code Civ. Proc.,] § 2034.210.) The information must include a sworn declaration containing, among other things, a brief narrative statement of the general substance of the testimony the expert is expected to give. ([Code Civ. Proc.,] § 2034.260, subd. (c).)" (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 951.) Generally, "on objection of any party who has made a complete and timely compliance with [s]ection 2034.260, the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to . . . [¶] . . . [l]ist that witness as an expert under [s]ection 2034.260." (Code Civ. Proc., § 2034.300, subd. (a).)

"Failure to comply with expert designation rules may be found to be 'unreasonable' when a party's conduct gives the appearance of gamesmanship, such as undue rigidity in responding to expert scheduling issues. [Citation.] The operative inquiry is whether the conduct being evaluated will compromise these evident purposes of the discovery statutes: ' "to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation and trial; to prevent delay; and to safeguard against surprise." ' [Citation.]" (*Staub v. Kiley* (2014) 226 Cal.App.4th 1437, 1447.) "We generally review the trial court's ruling on a motion to exclude expert testimony for abuse of discretion, including its determination that a party 'unreasonably' failed to comply with an expert witness demand." (*Id.* at p. 1445.)

Here, there was no abuse. The vocational expert was appointed in September 2017, more than one year before the November 2018 hearing. Father exchanged e-mails

with the expert for approximately three months.  The expert explained the scope and purpose of his evaluation, writing, "The purpose of evaluation is to assess your employability and your earning ability based on marketable skills.  Marketable skills are the array of skills an individual has for which opportunities exist in the labor market.  The criteria beyond the aforementioned sections is set by the Regnery Case, focusing on an individual's qualifications, opportunities that exist for those qualifications in the labor market, and the individual[']s effort to obtain those opportunities[.]"  The expert also invited father to participate in the evaluation and explained what would happen if he did not.  Father thus had adequate notice of the expert's identity and the "general substance" of the expert's opinions, and the trial court acted within its discretion when it allowed the expert to testify.

## III

### *Standard of Living*

Father argues the trial court failed to consider evidence of the disparity in the parties' standards of living when making its child support order.  We disagree.

The child support amount generated by the guideline formula is presumptively correct.  (Fam. Code, §§ 4053, subd. (k), 4057, subd. (a).)[1]  A parent requesting the court deviate from this amount has the burden to establish by a preponderance of the evidence "that application of the formula would be unjust or inappropriate in the particular case, consistent with the principles set forth in [s]ection 4053."  (§ 4057, subd. (b).)  The section 4053 policy principles include:  "(1) the interests of the child are the state's top priority, (2) a parent's principal obligation is to support his or her children 'according to the parent's circumstances and station in life,' (3) '[b]oth parents are mutually responsible for the support of their children,' (4) '[e]ach parent should pay for the support of the children according to his or her ability,' (5) children should share in both parents'

---

[1] Undesignated statutory references are to the Family Code.

7

standard of living [and therefore child support may appropriately improve the living standard of the custodial household], and (6) in cases 'in which both parents have high levels of responsibility for the children,' child support orders 'should reflect the increased costs of raising the children in two homes and should minimize significant disparities in the children's living standards in the two homes.' (§ 4053, subds. (a), (b), (d)-(g).)" (*In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 753.)

Section 4057, subdivision (b)(5)(B) states: Special circumstances showing the formula would be "unjust or inappropriate . . . include, but are not limited to, . . . [¶] . . . [c]ases in which both parents have substantially equal time-sharing of the children and one parent has a much lower or higher percentage of income used for housing than the other parent." This code section "gives the trial court 'considerable discretion to approach unique cases on an ad hoc basis.' " (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1049.)

At the evidentiary hearing, the court heard about both father's and mother's financial circumstances and living situations. For instance, father testified that he lived in an apartment that cost approximately $1,435 to $1,485 per month, although he paid $500 per month. Mother stated she lived with her husband and two other children in a home with a mortgage payment of $2,200 per month. Father raised the same argument before the trial court that he raises now, saying he did not think it was fair that "our son can't have certain things at one house but then is dining on lobster at the other house." We are required to presume the court complied with the relevant statutes and considered all relevant evidence, because there is no evidence to the contrary. (See Evid. Code, § 664; *In re Julian R.* (2009) 47 Cal.4th 487, 499.)

Further, the court reached a reasonable conclusion about father's future earning capacity based on the vocational expert's testimony. Even if father's income did not support a standard of living father viewed as adequate at the time of the hearing, the vocational expert testified he was immediately capable of earning $50,000 per year.

8

Recognizing that this did not represent father's current income, the court noted the modification order would not take effect until the coming year. Given mother's testimony about her current income and expenses, including her housing, the testimony of the vocational expert suggested that there would be little disparity once father was employed.

The trial court did not abuse its discretion.

IV

*Imputation of Income*

Father argues the trial court erred when it relied on the vocational expert's testimony to determine father's earning capacity, claiming section 4331, subdivision (a) permits vocational evaluations to assess only spousal support, not child support. We disagree for two reasons.

One, defendant did not raise this argument at the evidentiary hearing, so it is forfeited. (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 738.)

Two, father raised a similar argument that we rejected in an earlier appeal. One year before the evidentiary hearing, the trial court denied a discovery motion filed by father related to his motion to modify child support. Father argued on appeal that the trial court did not have authority to order him to submit to a vocational evaluation, claiming section 4331, subdivision (a) allows such evaluations only in dissolution or legal separation proceedings. (*Rybolt v. Riley* (Mar. 24, 2020, C086056) [nonpub. opn.].) We rejected his argument, explaining, "Section 4058, subdivision (b) 'gives the court the discretion, in applying the guideline [child support] formula, to impute income to a parent based on his or her "earning capacity," in lieu of considering the parent's actual income.' (*In re Marriage of Smith* (2001) 90 Cal.App.4th 74, 81.) To determine a parent's earning capacity, the court would need an expert's opinion on the subject. Specifically, an expert who has conducted a job survey of available employment opportunities for a person with the parent's skills, experience, and background. The vehicle for accomplishing this is

9

Evidence Code section 730, which allows for the appointment of an expert to investigate, render a report, and testify concerning the 'matter as to which the expert evidence is or may be required.' Because the trial court had the authority to order a vocational evaluation under section 4058 and Evidence Code section 730, it did not err when ordering father to undergo such evaluation." (*Rybolt v. Riley, supra*, C086056.) We adhere to this reasoning.

The trial court therefore did not err when it made findings as to defendant's earning capacity using the vocational expert's testimony.

DISPOSITION

The order is affirmed. Respondent Courtney Rybolt shall recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/s/
MESIWALA, J.


We concur:


/s/
HULL, Acting P. J.


/s/
RENNER, J.