Filed 11/26/25  Marriage of Bogert and Kapasi CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

|  |  |
|---|---|
| In re the Marriage of BRIGITTE BOGERT and HEMANG KAPASI.<br><br>BRIGITTE BOGERT,<br><br>Respondent,<br><br>v.<br><br>HEMANG KAPASI,<br><br>Appellant. | A170541<br><br>(San Francisco City & County<br>Super. Ct. No. FDI-21-794669) |

Hemang Kapasi appeals from a family court judgment in an action for the dissolution of his marriage to Brigitte Bogert. He contends the family court erred by (1) miscalculating his child support payments based on imputed income, (2) denying him compensation for managing Bogert's separate property investments, (3) selectively admitting evidence, (4) allocating to Bogert past and future profits on an investment made with a loan from Bogert's separate property, and (5) awarding her attorney's fees that she did not need and Kapasi could not pay without

1

undue hardship.  Kapasi's first argument is either untimely or premature, and he has failed to demonstrate error with his remaining contentions.  We will therefore affirm.

## BACKGROUND

The record Kapasi has provided consists mostly of the family court's orders and judgment.  We therefore base our summary of the relevant factual background on those documents, supplemented with some information from the reporter's transcript of one of the three trial days.

Kapasi and Bogert married in 2009 and separated in 2020.  They signed a premarital agreement.  Before the marriage, Bogert inherited separate property that was worth about $1.6 million in 2022.  Bogert filed a petition for marital dissolution in 2021.  They have two minor children.

On January 6, 2023, the family court ordered Kapasi to pay $2,383 per month in child support beginning in March 2023.  The family court's calculation imputed $20,000 in monthly income to Kapasi.  The family court based this figure on the fact that he earned $120,000 in six months in his most recent employment, which was in 2015.  The court also found that Kapasi qualified for job opportunities with pay in that range because he had a B.A. and M.B.A. and had held high-level positions in tech and finance.  The court found Kapasi's monthly expenses were inconsistent with his claim that he had no money to support himself or the children.  Kapasi did not appeal the child support order.

In the same order, the family court found Kapasi increased Bogert's attorney's fees and costs by failing to serve his preliminary disclosure for over a year after it was due, failing to disclose distributions from an investment in KiloAngel Onshore LP, and being vague and misleading regarding the value of those distributions. The court reserved jurisdiction to award sanctions to Bogert in the form of attorney's fees and costs.

In October 2023, the family court entered a stipulated judgment dividing certain property and terminating the couple's marital status. The family court also found that Kapasi perpetrated acts of domestic violence against Bogert and issued a restraining order protecting her. The court denied Kapasi's competing request for a restraining order. The court reserved jurisdiction over Bogert's request for prevailing party attorney's fees under Family Code section 6344.[1]

The family court held a trial on the remaining issues in October and December 2023. Kapasi was not represented by counsel. The family court preliminarily denied Kapasi's motion during the trial to modify child support. However, the court scheduled the matter of child support for a future hearing and allowed Kapasi to undergo a vocational evaluation in the interim. The court reserved jurisdiction to modify child support at the future hearing retroactive to October 2023.

Kapasi sought compensation for managing Bogert's separate property investments during the marriage. He claimed he helped her separate property trust grow in value from

---

[1] Undesignated statutory citations are to the Family Code.

3

$1 million to $5 million. The family court denied this request, citing, among other things, Kapasi's waiver in the premarital agreement of the right to manage Bogert's separate property and the lack of evidence that Kapasi was qualified as an expert in managing securities. A letter from Bogert's wealth manager, which the family court stated it had admitted without objection from Kapasi, also refuted Kapasi's testimony. The letter stated that Kapasi offered unsolicited investment suggestions to Bogert's portfolio manager and his proposals were never implemented without consulting with Bogert and obtaining her approval. Kapasi expressly waived his right to cross-examine the wealth manager. The court also noted that Kapasi had failed to provide any evidence or formula by which the court could value his claim for compensation.

Bogert claimed at trial that Kapasi's investment in KiloAngel Onshore LP was community property and that she was entitled to 50 percent of the past and future returns from the investment. Bogert had loaned Kapasi $500,000 from her separate property for the investment. They signed a loan agreement, which was admitted as an exhibit at trial. Bogert only made the loan based on an agreement that the investment would be a joint investment, and a contemporaneous text message introduced as an exhibit at trial substantiated this. Kapasi received over $620,000 in distributions from the investment. The family court agreed with Bogert that the investment and returns were community property and divided the past and future returns equally.

4

The family court's statement of decision finally addressed Bogert's requests for attorney's fees as the prevailing party under section 6344 and as sanctions under section 271 for Kapasi's incomplete financial disclosures. The court noted that Bogert had prevailed in obtaining a domestic violence restraining order and Kapasi had not. The court also found that Kapasi had failed to report significant income, including KiloAngel Onshore LP income, and that this had unreasonably increased the volume and cost of litigation in violation of section 271. It awarded Kapasi over $27,000 in attorney's fees as sanctions and over $64,000 in prevailing party attorney's fees under section 6344, for a total of more than $91,000.

The family court filed its statement of decision after the trial in May 2024. Kapasi filed a notice of appeal that same month. In June 2024, the family court filed a final judgment incorporating the October 2023 domestic violence restraining order, a child custody and visitation order, the January 2023 child support order, the October 2023 stipulated order dividing assets, and the statement of decision after the trial.

## DISCUSSION

We begin by reviewing a few general principles governing appellate review because they affect our resolution of most of Kapasi's arguments. "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the

5

judgment.  [Citations.]  'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'  [Citations.]  'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court.  "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." '  [Citation.]  ' "A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed." '  [Citation.]  'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' "  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 (*Jameson*).)  An adequate record is also a practical necessity.  "Appellate judges have no independent knowledge of the case out of which an appeal arises or of the lower court proceedings."  (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2024) ¶16:385.)

With these principles in mind, we turn to Kapasi's individual arguments.

## I.  Child Support

Kapasi first challenges the family court's award of child support to Bogert, contending the court improperly imputed income to him without a proper vocational evaluation and assumed his earning capacity based on speculation.

The only child support order in the record before us is the one entered in January 2023. "Where an order after hearing is neither interlocutory nor intermediate but a final determination, an injured party must timely appeal or lose the opportunity to do so." (*In re Marriage of Lusby* (1998) 64 Cal.App.4th 459, 473.) "A temporary support order is operative from the time of pronouncement, and it is directly appealable." (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637.) Consequently, if a party does not timely appeal from a support order, the order cannot be reviewed in a later appeal from the judgment. (*Lusby*, at p. 473; *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1216; see also *Gruen*, at p. 638 [" 'If an order is appealable, . . . and no timely appeal is taken therefrom, the issues determined by the order are res judicata.' "].)

The January 6, 2023, child support order was final, not interlocutory or intermediate, so it was appealable. The time to appeal from the that order expired, at the latest, 180 days from the date the order was filed, meaning early July 2023. (Cal. Rules of Court, rule 8.104(a)(1)(C), (c)(3).) Kapasi filed his notice of appeal on May 20, 2024. Because Kapasi did not file a notice of appeal of the support order within 180 days from January 2023, we cannot consider his challenge to it.

Kapasi seems to fault the family court, in part, for imputing income to him before a vocational evaluation was available. We understand him to contend that the family court erred by denying his motion to modify child support in October 2023 despite his pending request for a vocational evaluation.

7

This aspect of Kapasi's appeal appears premature. Although the family court stated in its statement of decision that it had denied his motion to modify child support, the family court must have intended this as a tentative or preliminary ruling because it set a further hearing on the matter of child support to give Kapasi time to obtain a vocational evaluation and reserved jurisdiction to modify child support retroactive to October 2023. The trial court could only reserve jurisdiction in this manner if it had withheld a definitive ruling on Kapasi's motion. (§ 3651, subd. (c) [with exceptions not relevant here, a permanent "support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate"]; see also § 3603 [interim order of support "may be modified or terminated at any time except as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate"].) If Kapasi disagrees with the family court's ruling on his request to modify child support based on the vocational evaluation — whatever that ruling might have been or might be in the future[2] — his remedy would be to timely appeal from such a ruling.

_____

[2] It is not clear from the record whether the vocational evaluation and any subsequent proceedings relating to child support ever occurred. The October 26, 2023 transcript reflects that, after the court informed Kapasi he would have to pay up front for the vocational evaluation (subject to a later possible reallocation), Kapasi told the trial court that he would forgo the vocational evaluation if it cost more than $1,000. Without providing any cost estimates, court informed Kapasi that it was

We observe that if we were to consider the merits of Kapasi's challenge, whether to the January 2023 child support order or the October 2023 order preliminarily declining to modify child support, we would affirm because Kapasi has failed to provide an adequate record to demonstrate error. Kapasi has cited nothing in the record to support his claims about his income or to show a lack of evidentiary support for the family court's findings. The authorities Kapasi cites for the proposition that a court is required to rely on expert vocational analysis for the imputation of income do not stand for that proposition. (*In re Marriage of Smith* (2001) 90 Cal.App.4th 74, 81–82 [court cannot impute income to incarcerated parent without evidence the parent has the ability and opportunity to work in prison]; *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1373 [court can compute child support based on parent's earning capacity when parent has ability and opportunity to work but is unwilling to work].)

## II. Compensation for Managing Bogert's Trust

Kapasi contends the family court erred by denying him compensation for managing Bogert's separate property trust. He asserts the family court disregarded his evidence, which is legal error and a violation of due process.

Kapasi has not provided a complete record of the trial, so this issue must be resolved against him. He acknowledges in his

---

"likely going to be more than that," but said Kapasi could make that determination for himself and "then let [the court] know" how he wished to proceed.

brief that the trial took place on October 24 and 26, 2023, and December 5, 2023. But he has provided a reporter's transcript only for October 26, 2023, with no transcript or substitute for the other days of trial. Kapasi does not cite the reporter's transcript he has provided, but it indicates that the family court began taking testimony regarding the trust administration compensation and had to stop for the day before Kapasi was finished. The family court's statement of decision cites evidence and proceedings that are not reflected in the reporter's transcript we have, which confirms that proceedings on the trust administration compensation issue continued on the third day of trial. We must presume that evidence was presented at the third day of trial that supports the judgment. (*Jameson*, *supra*, 5 Cal.5th at p. 609; see *LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061–1062 [treating argument as waived where appellants omitted key documents from record and failed to cite to the record].)

Kapasi has failed to demonstrate error even apart from the inadequate record. He fails to cite any authority entitling him to compensation for managing Bogert's separate property trust. He makes assertions and cites authorities that purportedly discuss the duties and remuneration of trustees. But there is no indication that Kapasi was a trustee, so his citations are inapposite at best. Moreover, the family court's judgment explains that it credited evidence showing that Kapasi's investment proposals were just suggestions and that he had no actual authority to administer the trust. The court's judgment

10

also cites the premarital agreement in which Kapasi expressly waived any right to manage Bogert's separate property trust, which is also nowhere to be found in the record. These statements provide the reasons why the family court did not credit Kapasi's claim to compensation for increasing the value of Bogert's trust, so we are not convinced that the family court improperly disregarded Kapasi's evidence.

## III. Selective Admission of Evidence

Kapasi accuses the family court of violating his due process rights by selectively admitting Bogert's evidence and excluding his own. The record is insufficient to allow us to consider this argument. Kapasi has not provided a full record of the entire trial, so there is no way for us to compare its rulings on all of Bogert's evidence with all of Kapasi's evidence. Because Kapasi has failed to provide an adequate record, he has defaulted, and we must resolve this issue against him by presuming the family court acted properly. (*Jameson*, *supra*, 5 Cal.5th at p. 609.)

Additionally, what little record Kapasi has provided contradicts his argument. He contends the family court admitted Bogert's evidence despite lack of verification or authentication. But as the family court's statement of decision notes repeatedly and as the reporter's transcript reflects, Kapasi did not object to the admission of Bogert's exhibits. The reporter's transcript also shows that while the family court appears to have sustained a few objections to Kapasi's testimony, such as when he attempted to testify about settlement discussions, it otherwise allowed him to present his case. Additionally, Bogert was represented by

11

counsel at trial while Kapasi was not, which could have played a role in Bogert succeeding in having more of her evidence admitted.  (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1 ["A party proceeding in propria persona 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.'  [Citation.]  Indeed, ' "the in propria persona litigant is held to the same restrictive rules of procedure as an attorney." ' "].)

## IV.    Splitting of Profits from Investments

Kapasi argues the family court erred by giving Bogert a share of the profits from his investment in KiloAngel Onshore LP.  He asserts that the loan agreement between him and Bogert defined the repayment terms for Bogert's loan of her separate property and did not allow for sharing of profits.  He also asserts that the premarital agreement did not provide for sharing of profits from investments and there was no agreement to transmute the KiloAngel investment into community property. Kapasi further argues that the text message about the investment being a joint one that the family court relied on was simply a voluntary statement contingent on the marriage continuing, not a valid transmutation agreement under section 852.

The record does not contain a copy of the loan agreement, even though it is central to Kapasi's arguments.  If the loan agreement shows that Bogert loaned Kapasi personally a sum of money secured by her separate property assets, then it might

12

support Kapasi's position that the loan was intended to be Kapasi's separate property to invest however he wanted. In such a scenario, Kapasi would be obligated to repay Bogert the principal and interest on the loan but would be entitled to keep the returns on his investments. This scenario is plausible, but to accept it we would need to be able to read the loan agreement, and we cannot. Likewise, we would need to be able to see the full text message exchange on which the family court relied and that Kapasi discusses, but that, too, is not in the record.

Without being able to review such evidence, we have no basis to reverse the family court's judgment. Although Kapasi is correct that a transmutation agreement must meet certain formalities and a text message might not qualify (§ 852, subd. (a)), the family court could have relied on the loan agreement itself as the required writing. Because the judgment is presumed correct, we must assume that the missing exhibits and transcripts of the rest of the trial support the family court's findings. For example, we must assume the family court correctly construed the text message. We must also assume the loan agreement shows that Bogert was loaning her separate property to the community, not to Kapasi personally. Kapasi has failed to affirmatively demonstrate error.

## V. Attorney's fees

Finally, Kapasi challenges the family court's award to Bogert of over $91,000 in attorney's fees. He argued in his opening brief that section 2030 requires a party requesting fees to demonstrate a need for financial assistance. Bogert pointed

13

out in her respondent's brief, however, that the family court's awards of attorney's fees were based on sections 271 and 6344, not section 2030. Kapasi then pivoted in his reply brief to argue that sections 271 and 6344 require fairness, Bogert has substantial separate property assets worth more than $2 million, and his income is lower than the $240,000 per year that the family court imputed to him.

Section 271 states that a family court imposing attorney's fees as a sanction under that statute shall consider "all evidence regarding the parties' income, assets, and liabilities" and "shall not impose a sanction . . . that imposes an unreasonable financial burden on the party against whom sanction is imposed." (§ 271, subd. (a).) However, it further states that the party requesting attorney's fees under section 271 "is not required to demonstrate any financial need for the award." (*Ibid.*) Section 6344, subdivision (c) states that before awarding attorney's fees under that statute, a court must "determine pursuant to [s]ection 270 that the party ordered to pay has, or is reasonably likely to have, the ability to pay." (Accord, § 270 ["If a court orders a party to pay attorney's fees or costs under this code, the court shall first determine that the party has or is reasonably likely to have the ability to pay."].) " 'We apply an abuse of discretion standard in reviewing the amount of an attorney fee award.' " (*Dragones v. Calkins* (2024) 98 Cal.App.5th 1075, 1085.)

Once again, the record does not allow Kapasi to demonstrate error. We are willing to accept, for the sake of argument, that the family court was obligated to consider

14

Bogert's assets and Kapasi's income before awarding attorney's fees. But Kapasi asks us to conclude that the family court abused its discretion when awarding Bogert attorney's fees because she has separate property valued at more than $2 million while his income is $150,000 or $66,000, not the $240,000 imputed to him. We need not decide whether these facts would justify reversal because there is nothing in the record to support them. (*Jameson*, *supra*, 5 Cal.5th at p. 609, fn. 11 [if a fact is not in the record, it effectively does not exist].)

The January 2023 child support order shows Bogert's separate property investments were worth about $1.6 million as of October 2022 but that she was withdrawing hundreds of thousands of dollars per year from those assets. Kapasi cites nothing to show the value of Bogert's assets in 2024 when the family court issued its judgment. On Kapasi's side, nothing in the record supports his claim that his income was $66,000 or $150,000. For the former figure, Kapasi says only that his updated income and expense form for 2024 "will show" this level of income, which is a tacit concession that this fact is not in the record and the family court could not have known it when the court ruled in May 2024. As for the $150,000 figure, the reporter's transcript suggests that Kapasi had provided evidence to the family court showing he was receiving a salary of $150,000. But the record does not contain the evidence itself, so we have no way of knowing what it was. The family court also expressly stated in the transcript that Kapasi had income-generating activities above and beyond that salary, and the record does not

contain the evidence for this statement, either.  Kapasi does not discuss or acknowledge these other possible sources of income.

Moreover, the family court imputed $240,000 in income to Kapasi based on his earning capacity as demonstrated by his last income in 2015, not his actual income.  As we discuss *ante* regarding his challenge to the child support order, Kapasi cites nothing in the record to show any lack of evidentiary foundation for the $240,000 figure or that he is incapable of increasing his income to that level.  The family court's remarks regarding other income-generating activities suggest he is fully capable of earning that amount.  Again, we presume the family court's judgment is correct, and Kapasi has the burden of providing a record to support any claim of error.  (*Jameson, supra*, 5 Cal.5th at pp. 608–609.)  Because the record Kapasi has provided does not support his assertions of the parties' relative financial conditions or address the contrary facts that the family court credited, the presumption of correctness remains unrebutted, and we must affirm.

### DISPOSITION

The judgment is affirmed.

BROWN, P. J.

WE CONCUR:

GOLDMAN, J.
CLAY, J.*

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.